**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DON BLAYLOCK,** § | | |
| § | | |
| v. § | **NO.  A-07-CA-721 AWA** | |
| § | | |
| **MICHAEL J. ASTRUE,** § | | |
| **COMMISSIONER OF THE SOCIAL** § | | |
| **SECURITY ADMINISTRATION** § | | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are: Plaintiff's Brief (Clerk's Doc. No. 17); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 23); and the Social Security Record filed in this case (Cited as "Tr."). Both parties have consented to have the Court adjudicate the claims.  Plaintiff appeals from the Administrative Law Judge's (ALJ) determination that he is not "disabled" and presents four issues for review: (1) whether the ALJ's decision improperly failed to find that Plaintiff was limited to less than a full day of gainful work activity for a closed period from his date of injury to surgery and recovery thereafter; (2) whether the ALJ's decision failed to give proper consideration of the treating doctor's opinion; (3) whether the ALJ's decision improperly failed to address how Plaintiff would be able to maintain gainful work activity during the period between onset and recovery from the surgery when he was undergoing various treatment efforts; and (4) whether the ALJ improperly relied on vocational expert testimony which Plaintiff alleges is inconsistent with the *Dictionary of Occupational Titles* (DOT).

**I.  BACKGROUND**

Plaintiff is a 42 year-old male with a high school level education.  Before dropping out of the work force and applying for disability benefits, Plaintiff worked as a cook, janitor, warehouse supervisor, materials handler, and forklift operator.  These jobs were skilled to unskilled and

performed at the medium to heavy exertional level. In 2005, Plaintiff filed for benefits commencing in June 1, 2005, alleging disability due to a herniated disc and back pain. Plaintiff sought review of initial and reconsideration denials (Tr. 22, 32). Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on October 4, 2006 in Austin, TX. The ALJ issued an unfavorable decision dated December 29, 2006 (Tr. 9-19), finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council declined Plaintiff's Request for Review by notice on June 22, 2007 (Tr. 4-6), making it the Final Decision of the Commissioner. On September 5, 2007, Plaintiff brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying Plaintiff benefits under the Act.

## II. THE HEARING BEFORE THE ALJ

On October 4, 2006, Administrative Law Judge ("ALJ") C. F. Moore, held a hearing on Plaintiff's application for benefits. Plaintiff testified at the hearing and was represented by his attorney Mary Ellen Felps. Thomas R. Irons, an impartial vocational expert also testified at the hearing (Tr. 12).

### A.    Plaintiff's Testimony

Plaintiff was born January 20, 1966 and was 40 years of age at the time of his hearing before the ALJ. Plaintiff testified that he lives in an apartment with his girlfriend and her child, who gets home from school around 4:00 p.m. He reported that he gets up around 10 a.m., lies on the couch, and watches television. He alleged that he does not get out of the apartment very often. He reported that prior to his injury, he frequently cooked for his family, but is no longer able to do so with any regularity. Plaintiff alleged that his legs go numb when he walks very far. He uses a cane, but it is not prescribed by his doctor. He had some improvement in his condition after surgery, but he alleged

he still has numbness and tingling in his upper extremities and also pain which radiates down his hip and legs, all the way to his feet. He also reported that he does not sleep well at night; he can lift and carry one gallon of milk; he can sit about one hour; and he can stand one to two hours.

**B.**     **Vocational Expert's Testimony**

The vocational expert was asked whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all these factors the individual would be able to perform the requirements of representative occupations such as parking lot attendant, toll collector, and information clerk. The vocational expert testified that these jobs are light, unskilled, and allow for the postural restrictions and changes of position required by the claimant's residual functional capacity. He further testified that there exists 1,800 jobs as a parking lot attendant within the regional economy and 43,000 in the national economy; 1,700 jobs as a toll collector in the regional economy and 80,000 in the national economy; and 1,200 jobs as an information clerk in the regional economy and 14,600 in the national economy.

### III.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ's opinion found that the claimant had the following severe impairment: degenerative disk disease of the cervical spine with radiculopathy. He also found that the claimant does not have an impairment or combination of impairments that meets the requisite level of impairments as prescribed in the Social Security regulations (Tr. 14). The ALJ found that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. The ALJ noted that although the claimant has

described daily activities which are fairly limited, this is not confirmed by what he has told his doctors. For example, his description of walking limitations is specifically contradicted by what he has told his physicians, who reported that he has "no significant limit on the distance he could walk without having pain or needing to rest." Similarly, his claim that he has improved little since the surgery is contradicted by treatment notes that show 70 percent relief by February 29, 2006.

Accordingly, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act. Based on medical records and testimony, the ALJ found that the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; to stand and walk 6 hours in an 8 hour work day at 1-hour intervals; and to sit for 6 hours in an 8 hour work day with the option to stand and stretch every hour or so. The claimant cannot climb ladders, ropes, and scaffolds, but may occasionally climb ramps and stairs. The claimant may occasionally stoop, kneel, crouch, and crawl. He must avoid overhead work, including overhead reaching, but he may frequently reach in other directions and frequently handle and finger (Tr. 15).

## IV. ISSUES BEFORE THE COURT

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Plaintiff argues that (1) the ALJ's decision improperly failed to find that Plaintiff was limited to less than a full day of gainful work activity for a closed period from his date of injury to surgery and recovery thereafter; (2) the ALJ's decision failed to give proper consideration to the treating doctor's opinion; (3) the ALJ's decision improperly failed to address how Plaintiff would be able to maintain gainful work activity during the period between onset and recovery from the surgery when he was undergoing various treatment efforts; and

(4) the ALJ improperly relied on vocational expert testimony which Plaintiff alleges is inconsistent with the *Dictionary of Occupational Titles* (DOT).

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

# VI. ANALYSIS

**A.    Did the ALJ's decision err in not finding that Plaintiff was limited to less than a full day of gainful work activity for a closed period from his date of injury to surgery and recovery thereafter?**

Plaintiff argues that from onset on June 1, 2005 through May 2006—a period of 12 months—he was limited to less than sedentary work such that he should have at least been granted a period of disability for these 12 months. Plaintiff asserts that the fact that Plaintiff was still complaining of neck spasms to his doctor in May of 2006 shows he was disabled throughout this period. However, the medical record does not support a conclusion that Plaintiff was disabled for the 12 month period. Treatment notes show Plaintiff had informed his doctor that he had 70 percent relief following surgery on February 8, 2006 (Tr. 213), March 16, 2006 (Tr. 211), and June 27, 2006 (Tr. 205). Furthermore, Plaintiff reported to his doctor on several occasions that he has "no significant limit on the distance he could walk without having pain or needing to rest." (Tr. 205, 208, 211, 213). This suggests that Plaintiff was not disabled for a closed 12-month period, but rather his condition was significantly improved following surgery. Therefore, substantial evidence supports the ALJ's decision that Plaintiff was not disabled for a closed 12-month period.

**B.    Did the ALJ's decision give proper consideration to the opinion of his treating physician?**

Plaintiff also argues that the ALJ did not give proper consideration to the opinion of his treating physician. The opinion of the treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

"Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  Therefore, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Id*.  Moreover, the treating physician's opinions are not conclusive and their opinions may be assigned little or no weight when good cause is shown. *Id*. at 455-56.  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Plaintiff first argues that the ALJ recognized that the treating physician, Dr. Sahni, limited the Plaintiff to less than sedentary work, but the ALJ disregarded these conclusions completely and made an assessment based solely on the ALJ's own opinion, unsupported by any medical opinion. However, a review of the record shows this argument to be without merit.  As the ALJ set out in his decision, the limitations Dr. Sahni placed on the Plaintiff were made *before* the Plaintiff underwent an anterior cervical decompression fusion in an effort to relieve some of the pain Plaintiff was suffering from.  Dr. Sahni's medical notes taken after the surgery show Plaintiff had vast improvement in his condition, making the previous limitations no longer valid.  The ALJ relied on Dr. Sahni's own observations and notes in determining that the limitations were no longer valid, so

it is inaccurate to say that the ALJ disregarded the opinion of the treating physician completely and made an assessment based solely on the ALJ's own opinion, unsupported by any medical opinion.

Plaintiff also contends that the ALJ disregarded evidence of other serous impairments that should have been addressed and were not.  Specifically, Plaintiff complains that the ALJ failed to consider the low back pain, lower extremity impairments, and dysphagia that Dr. Sahni allegedly diagnosed.  Additionally, Plaintiff contends that the ALJ failed to properly consider the Plaintiff's mental health conditions.  First, the Court notes that the ALJ specifically addressed Plaintiff's complaints of back pain and a limited ability to walk.  The ALJ properly noted that for the majority of the period in question, there was little to suggest any limitation due to low back pain.  Plaintiff's own statements and Dr. Sahni's treatment notes showed no interference with Plaintiff's ability to walk for several months following surgery.  Despite a few instances where Plaintiff complained to his doctor about low back pain, Plaintiff was not treated or referred for treatment as a result of low back pain until October 17, 2006, when Plaintiff reported an inability to walk even a quarter of a block.  The ALJ found that Plaintiff's statements concerning his limitations were not entirely credible given what he had told his doctor in past visits, so it is inaccurate to say that the ALJ failed to consider these limitations.  Rather, the ALJ considered them, but found the objective medical evidence did not support a finding that Plaintiff was disabled by these conditions.  Similarly with the dysphagia, the treating physician said this was to be expected following the surgery that Plaintiff underwent in December of 2005, and the objective medical evidence does not suggest this was a disabling condition.

As for the mental health conditions, the Court first notes that Plaintiff had not alleged disability based upon any mental limitations, nor did he testify to any mental limitations during the

hearing besides a brief mention of a GAF of 50 (Tr. 291). As a result, the ALJ was not under an obligation to consider an impairment that was not alleged to be disabling. Plaintiff never raised the issue of mental impairment until this appeal, and therefore he cannot say that he put his mental limitations before the ALJ. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Nevertheless, even assuming the mention of Plaintiff's GAF was sufficient to put his mental limitations before the ALJ, a review of the evaluation that Plaintiff claims shows a "severe impairment psychiatrically" is not as supportive as Plaintiff would like the Court to believe. The evaluation states that Plaintiff "has moderately good academic and cognitive ability for a variety of training and employment opportunities" and that he "does not appear to be in need of any psychotherapy at this time." Additionally, under the heading of "Vocational Assets," the evaluation states that Plaintiff has "[m]oderately good intellectual ability for employment and training opportunities." (Tr. 226). Plaintiff claims that the psychologist who performed the evaluation found a "severe impairment psychiatrically," but Plaintiff does not cite to where in the record this statement can be found, and the Court was unable to locate any mention in the evaluation that Plaintiff suffers from a "severe impairment psychiatrically."

With regard to the GAF of 50, which Plaintiff argues shows "serious symptoms and serious impairment in social or occupational functioning" and an inability to keep a job, other statements in the evaluation show Plaintiff's limitations in this area are not as serious as Plaintiff contends. For example, the evaluation also states that Plaintiff "has no difficulty getting along with people," and that Plaintiff "has moderately good academic and cognitive ability for a variety of training and employment opportunities." These statements do not suggest serious impairment in social or occupational functioning.

**C.      Did the ALJ's decision improperly fail to address how Plaintiff would be able to maintain gainful work activity during the period between onset and recovery from the surgery when he was undergoing various treatment efforts?**

Plaintiff argues that the ALJ did not address how Plaintiff would be able to maintain gainful work activity during the period between onset and recovery from the surgery when he was undergoing various treatment efforts including epidural injections and ultimately surgery. However, it is unclear why this would be necessary given the determination by the ALJ that Plaintiff's condition had significantly improved by February of 2006. The ALJ's decision was dealing with the residual functional capacity of the Plaintiff after he had undergone surgery for his condition, and Plaintiff had reported a 70 percent improvement by this point. The period between onset and recovery from the surgery was roughly seven months, which is less than the 12 months required to prove disability under the Act. Therefore, the Court finds no error in failing to address how Plaintiff would be able to maintain gainful work activity during the period between onset and recovery from the surgery, as this was less than a 12 month period, and the decision was only dealing with the Plaintiff's residual functional capacity after he had undergone surgery.

**D.      Did the ALJ improperly rely on vocational expert testimony which Plaintiff alleges is inconsistent with the *Dictionary of Occupational Titles* (DOT)?**

Plaintiff makes several arguments under this issue heading. First, Plaintiff argues that the hypothetical posed to the vocational witness on which the decision was based was defective because it did not include all of Plaintiff's physical impairments, nor did it address the period of time when Plaintiff was undergoing various treatments. This argument is in part dependant on the Court accepting Plaintiff's previous argument that the ALJ improperly disregarded evidence of other serious impairments that should have been addressed and were not. However, as discussed above,

the Court finds substantial evidence supporting the ALJ's decision regarding these impairments. The ALJ must only include in the hypothetical to the VE those impairments which the ALJ actually finds credible, and not those which he rejects, assuming that substantial evidence supports the findings. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1998). The ALJ properly found that these alleged impairments were not supported by the medical evidence, such that he was not required to submit them in the hypothetical to the VE. To the extent that the hypothetical did not include the period of time when Plaintiff was undergoing various treatments, this argument is largely addressed in the previous issue and is also without merit. The hypothetical was asking about whether jobs existed in the economy that an individual with Plaintiff's RFC could perform at a time *after* Plaintiff's condition had improved, so there was no reason to include the period of time when Plaintiff was undergoing various treatments.

Plaintiff also contends that the jobs offered by the VE are not consistent with the limitations given by the ALJ in that they do not allow rest breaks, they may require reaching, they include hazards that exceed Plaintiff's limitations, and they require too much walking. The VE testified that there were numerous jobs in the economy that Plaintiff could perform, and Plaintiff's attorney neither cross-examined the VE nor provided any contrary evidence with regard to limitations that Plaintiff now contends are exceeded by the jobs the VE offered. Plaintiff's attorney only cross-examined the VE on the issue of the amount of fingering the jobs offered by the VE required, and whether the Plaintiff would be allowed time to rest or flex his fingers (Tr. 289–91). The Fifth Circuit has held that where the claimant offers no evidence contrary to the VE's testimony, the claimant fails to meet his burden of proof under the fifth step of the disability analysis. *Perez v. Barnhart*, 415 F.3d

457, 464 (5th Cir. 2005).  Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was capable of the work identified by the VE.

## VII.  CONCLUSION

The Magistrate Court **AFFIRMS** the final decision of the Commissioner and **ENTERS JUDGMENT** in favor of the Defendant.

SIGNED this 31st day of July, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE